### FREDERICK W. GRASSMEYER v. LEANDER BEESON.

See this case as to suits against the curators of estates of absent persons, after the introduction of the Common Law in 1840.

Where the proceeding was *in rem*, being for the specific performance of a bond to convey half a league of land, and for partition, and the defendant was absent from the State, and there was no statutory provision by which he could be served with process, it was held that the mode of service was a matter of practice, which, in the absence of express law, could be regulated by the Court; and the defendant having been cited by publication, the judgment was held to be valid. A curator for the defendant and an attorney *ad litem* were also appointed, and appeared.

The rules of the Common Law have never been considered obligatory, as matters of absolute principle, on questions of practice; but our Courts have either adhered to their former practice, or have adopted such rules of their own, as seemed dictated by considerations of policy and convenience, rather than pursue the Common Law practice, where the rule which it afforded was found to be unsuited to our system, or inconvenient of application.

Error from Colorado. Action of trespass to try title, by the plaintiff in error against the defendant in error, to the upper half of a league of land granted to Samuel Kennelly as his headright, April 28th, 1831.

Kennelly executed title bond to the plaintiff, August 5th, 1833, to make title to the undivided half of the league when the laws of the country would permit. Grassmeyer instituted suit on the bond, for title and partition, in the District Court of Colorado county, October 24th, 1840, and obtained a decree for title and partition, April 26th, 1841; and partition was accordingly made. The petition in said suit alleged that Kennelly was "absent, in parts unknown," and prayed service on Frederick Scranton, curator of his estate. November Term, Scranton answered that he was ignorant of the matters alleged in the petition, and demanded proof. It was then ordered that publication be made in the Austin City Gazette for six weeks, requiring the said Kennelly to appear at the next Term, &c. Publication was accordingly made. At next Term

A. M. Lewis was appointed attorney *ad litem* for Kennelly, and excepted on the ground that the law required personal service.

Defendant offered no evidence of title in himself. The Court instructed the jury that the decree for title in the said case of Grassmeyer v. Kennelly was a nullity. Verdict and judgment for defendant.

*G. W. Smith,* for appellant. I. It is insisted that the proceedings had to bring Kennelly before the Court would have been sufficient, prior to the introduction of the Common Law, 16th March, 1840. (Art. 98, Laws of Coahuila and Texas.)

Did the Acts introducing the Common Law (Hart. Dig. Art. 127, 128) repeal the above decree? It is contended that the former system of pleadings and practice of the Courts, as contradistinguished from those of the Common Law, were reserved and not repealed. (Art. 128.)

If I be correct in this, Kennelly was properly in Court at the rendition of the decree, Lewis having been appointed attorney *ad litem,* answered and appeared for him as is recited in the decree.

II. It is submitted whether the proceedings had against the curator of Kennelly was sufficient to bind him. The laws of Louisiana relative to the settlement of successions, matters of probate *et cetera* were introduced by ordinance of the Consultation, 22nd January, 1836. (Hart. Dig. Art. 983.)

The jurisdiction and power to appoint curators of absentees, were confined to and exercised only by the Probate Courts of Louisiana, at the time of the adoption of the laws of that State. (Civil Code La. Art. 50–53; 3 Martin, 529,) and hence must be "matter of probate," within the very language of the Ordinance; and the Courts of the Republic of Texas in virtue of this Ordinance would have the same jurisdiction and power in the appointment of curators of absentees, and would compel them to the performance of their duties as defined in the laws of Louisiana; and consequently curators of absentees

appointed in Texas would have the same rights and duties that belonged to them in Louisiana. This interpretation was placed on the Ordinance by the Courts of Texas universally, and much property has changed, and rights grown up under it.

This Ordinance was not repealed by the Act introducing the Common Law. (Hart. Dig. Art. 127.)

The Probate Act of 1840, (Hart. Dig. p. 320,) only repealed so much of the Louisiana law as conflicted with its provisions. (Art. 1052.) The residue of that system remained in force till 1846. (Art. 1108.) There is nothing in the Act of 1840 relating to the appointment, rights or duties of curators of absentees; hence we conclude that the appointment of Scranton as curator of Kennelly was legal and that the suit was properly brought against him, (October 24th, 1840,) and the decree would bind Kennelly as completely as a decree against an executor or administrator can bind the heirs and devisees of a decedent.

III. The Act authorizing service of process against non-residents by publication was passed ———, 1844, and I have been unable to find any Act authorizing that mode of service before that time. And if the manner pursued by plaintiff against Kennelly be not sufficient to sustain the decree, I am at a loss to know in what manner suits could have been brought by resident citizens against absentees and aliens for partition of their joint property, and all other suits not founded on a debt, so as to authorize an attachment; and it would involve this contradiction, that a resident citizen of Texas had rights and was injured, but had no remedy in the Courts of the country.

As intimated in the case cited in 9 Tex. R. 33, in the absence of any positive regulation on the subject of practice, (which was in that case in making parties to the suit without citation,) will not the Court be permitted to prescribe one, so that the citizens of the country could have redress of wrongs and injuries in the Courts, especially where all the precaution used in this case has been observed.

*W. G. Webb*, also, for appellant.

*J. H. Robson*, for appellee.   I.  In deraigning title from a decree of Court, the judgment must show that the parties appeared or were properly in Court.   (7 T. B. Monroe's R. 386, 387; 1 Litell's R. 118, 418.)

At the date of the institution of the suit of Grassmeyer v. Kennelly's curator, and judgment, there was no law providing for the appointment of a curator for an absentee.   (Hart. Dig. Art. 127.)

Even if citation of the curator had amounted to legal service, Scranton was not legally appointed curator of Kennelly, the petition showing that Kennelly's estate was situated in the county of Colorado; and that Scranton, the curator, was a resident of the county of Austin.

II.  Neither at the date of the institution of the suit or the rendition of the judgment, was there any provision in the law for service by publication.   (1 Tex. R. 307, 308.)

III.  The plaintiff's cause is not aided by the fact, that in the suit against Kennelly an attorney *ad litem* was appointed to represent him by the Court; for there was no law then in existence which authorized the appointment.   The laws of Coahuila and Texas provided for the appointment of an attorney *ad litem* in case of the absence of the defendant from the State, and the Civil Code of Louisiana provided for the appointment of a "curator *ad hoc*" for an absentee, in case there was no regular curator, or the absentee had no known agent in the State; but all these laws were repealed by the Act of 1840, introducing the Common Law, so that the appointment of an attorney *ad litem* in the suit against Kennelly which was instituted long after the adoption of the Common Law, was an absolute nullity   (1 Tex. R. 308.)

WHEELER, J.   The only question which it is material to consider, is whether the Court erred in adjudging, in effect,

that the decree of the District Court of Colorado county of the 28th of April, 1841, was a nullity for the want of personal service on the defendant. And it resolves itself into the question, whether at that day there was any mode by which the Courts of this country could acquire jurisdiction of the persons of absentees or non-residents on whom personal service could not be obtained, so as to render a decree which should be effectual to bind them; for every means of obtaining service upon the defendant, known to the law and practice of the Courts, either before or since that period, was resorted to in this instance. The curator of his estate was cited, and appeared and answered; publication was made; and an attorney *ad litem* was appointed to represent the absent defendant.

By the Spanish Law in force previous to the adoption of the Common Law, (Partidas, 3, 2, 12; 6 M. R. N. S. 17,) if a debtor was in captivity or absent, his creditors might require that a curator be appointed, against whom suits might be instituted. (And see note 2 of the Commentaries of Gregorio Lopez on L. 14, Tit. 14, Partidas 3; Escriche, Diccionario, *Verbo Ansente*.)

It does not appear when the curator was appointed. Kennelly had been absent from the country many years; and the fair presumption is that his curator was appointed before the repeal of the law which authorized his appointment. And the only ground on which it can be successfully contended that service on him was not effectual, is, that his trust was determined by the repeal of the law under which it was conferred. Such unquestionably would be the consequence of a repeal of a law which conferred a mere naked power not coupled with an interest. Under the law, the appointee might be, the prospective heir, or if there were not near relations who would accept, a creditor. May he not have acquired such vested rights of property, or such an interest connected with the trust, as that it would not determine immediately upon the repeal of the law? If in any event the trust capacity could legally have subsisted, when it has been acquiesced in by the defend-

ant himself for so great a length of time; when it is not and never has been questioned by him, though he is shown to have been in the county since the decree was rendered, but only by a mere intruder, it ought to be held to have subsisted in this instance. It ought to be very clear that the person who was cited and answered in that capacity had not authority, to warrant treating the judgment as a nullity in such a case as this. And if service upon the curator were the only ground on which the judgment of the Courts in such cases, at that period in the judicial history of the country, could be supported, we might well hesitate before declaring them nullities, and thereby unsettling the rights which have been acquired under them.

There is nothing in the objection that the curator resided in the county of Austin. He was probably appointed when the now county of Colorado was within the municipality of Austin.

By a law of the State of Coahuila and Texas (Decree 277, Art. 98,) provision was made for proceeding to judgment against absentees and non-residents by appointing an attorney *ad litem* to represent them. But by the general repealing clause of the Act of the 16th March, 1840, introducing the Common Law as the rule of decision, all laws in force prior to the 1st of September, 1836, not expressly excepted, were repealed; and the provision in question is not included among the exceptions to the effect of the repeal. In so far as the Common Law, or any statute of the Republic, then in force, afforded a remedy, that unquestionably furnished the rule, by which the remedy was regulated and must have been pursued from the period of its adoption. But where it furnished no remedy as a substitute for the remedy given by the former law for the enforcement of existing rights, and none was provided by the Legislature, it may well be questioned whether the general repeal could be held to take effect so as wholly to deprive a party of an existing right and remedy. It is competent for the Legislature to regulate the remedy as to them may seem proper; but there is high authority for holding that the Legis-

lature has not the power wholly to deprive a party of all remedy whatever; for that would be in effect to impair vested rights. (Bronson v. Kinzie *et al.*, 1 Howard, 311; Green v. Biddle, 8 Wheat, 1.) And such would be the consequence of giving effect to the repeal in this instance. Neither the Common Law, nor any statute of the Republic, afforded a remedy in cases like the present, as a substitute for that given by the previously existing law. In the Common Law practice, the appearance of the defendant might be enforced by seizing his goods; or he might be proceeded against to outlawry: thus putting him out of the protection of the law, so that he would be incapable of bringing an action for the redress of injuries; and, of course, of appealing from, or otherwise questioning any judgment which might be recovered against him, until the outlawry was reversed. It is more than questionable, perhaps, whether this proceeding could ever have been resorted to in this country: and if it could, by the ancient Common Law it could only be for felony; and later, in actions for trespasses *vi et armis*. (Co. Litt. 128.) It is only by statute in England, that it lies in any merely civil action. (3 Bl. Com. 284.) The Common Law, therefore, afforded no remedy in a case like the present: and if the repealing clause of the Act of 1840 operated a repeal of the law authorizing the appointment of a curator, and also of the provision for the appointment of an attorney *ad litem*, it took away all remedy in cases like the present; and left the citizen wholly without any remedy whatever for the enforcement of his rights of action against absentees and non-residents: unless it were competent for the Courts, as matter of practice, to adopt a mode of making parties, where the law prescribed none. In the case of Kegans v. Allcorn, (9 Tex. R. 25,) we thought ourselves warranted in adopting the latter conclusion, for the maintainance of rights acquired under judgments rendered in pursuance of the practice of the Courts at that period; and the considerations which induced the conclusion in that case, apply with equal force in the present. From the necessity of the case, the Courts were

compelled to adopt some course of procedure and rule of prac-
tice to be applied in a case like the present, in order to admin-
ister justice and adjudicate the causes of citizens having rights
of action against non-residents. And the course very gen-
erally, if not universally, adopted was that of service by pub-
lication; which was adopted in this instance; and which has
since received the sanction of legislative enactment. Under
this practice, as under that affirmed in the case of Kegans v.
Allcorn, rights have been acquired, and property has been held
and transmitted; and the well being of society demands that
they should not be disturbed. Nor ought the Courts at this
day to apply a rule of decision which will have that effect,
unless constrained by a legal necessity, in obedience to the
mandate of absolute legal principle. And there is no such
necessity in the present case. The rules of the Common Law
have never been considered obligatory, as matter of absolute
principle, on questions of practice : but our Courts have either
adhered to their former practice, or have adopted such rules
of their own, as seemed dictated by considerations of policy
and convenience, rather than pursue the Common Law prac-
tice, where the rule which it afforded was found to be unsuited
to our system, or inconvenient of application. As in the case
last cited, so in this case, we may say, that we are aware of
no usage or principle of the law in force here at the time which
was contravened by the practice adopted : and we think it was
competent for the Courts, in the absence of any rule of prac-
tice upon the subject, to prescribe one which should enable
them to make parties and proceed to judgment when neces-
sary to administer justice between our own citizens and non-
residents. If, therefore, the repealing clause in the Act of
1840, did not operate to deprive the plaintiff of the existing
remedy, that remedy was pursued. But if it could and did
have that effect, we think the service by publication, in accord-
ance with the prevailing practice, was sufficient; and that the
decree rendered in the case upon such service, was valid and
effectual to conclude the rights of the defendant therein

determined. The judgment is reversed and the cause remanded.